1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                            Plaintiff,<br><br>v.<br><br>ANDREW T.E. COLDICUTT,<br><br>                            Defendant. | Case No. 22-cv-274-MMA (KSC)<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Doc. No. 13] |

Plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC") filed this action alleging violations of federal securities law against Defendant Andrew T.E. Coldicutt ("Defendant" or "Coldicutt").  *See* Doc. No. 1.  Defendant moves to dismiss both causes of action against him.  Doc. No. 13.  Plaintiff filed an opposition to Defendant's motion, to which Defendant replied.  *See* Doc. Nos. 20, 22.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 15.  For the following reasons, the Court **DENIES** Defendant's motion to dismiss.

# I. BACKGROUND[1]

This action arises from purported violations of federal securities laws by Defendant.  Compl. ¶ 1.  Broadly, Plaintiff alleges that, beginning in 2017, Defendant participated in a "fraudulent scheme to create a sham public company and register an offering of its securities with the SEC, concealing from SEC filings the company's true control persons/promoters and source of funding, and his role as its securities attorney." *Id.*

## A.    Hiring of Defendant and Creation of Issuer A

Defendant "is a securities attorney licensed to practice law in the State of California." *Id.* ¶ 9.  "On or about May 8, 2017, two purported hedge fund managers ("Fund Manager 1" and "Fund Manager 2," collectively the "Fund Managers") contacted [Defendant] to inquire about potential legal representation for their supposed hedge fund (the "Fund")." *Id.* ¶ 13.  Fund Manager 1 was an undercover FBI agent, and Fund Manager 2 was a cooperating witness.  *Id.* ¶ 14–15.  On or about May 16, 2017, in Del Mar, California, Defendant met with the Fund Managers, who told Defendant they wanted to create a company and take it public.  *Id.* ¶¶ 17–18.  "On or about June 21, 2017, Fund Manager 1 signed [Defendant's] engagement letter on behalf of the Fund and wired $5,000 to [Defendant's] attorney trust account as a retainer." *Id.* ¶ 22.

"On or about July 18, 2017, the Fund Managers held a planning meeting with [Defendant] in Del Mar, California." *Id.* ¶ 23.  During the meeting, "[Defendant] described to the Fund Managers how he could create the façade of a *bona fide* business, take it public, and obtain quotation clearance for its stock to trade on the over-the-counter market[,]" and "suggested to the Fund Managers several ways to avoid regulatory scrutiny when creating a public shell company[,]" including that "the Fund Managers had

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

to come up with a strong business plan for the shell company from which to prepare a registration statement, to persuade the SEC that the shell company was a real business." *Id.* ¶¶ 28–51. "There was a peach on the table where the meeting took place, which had come from a nearby tree in the Fund Managers' yard. [Defendant] joked that he could write a plan for a company that would pick surplus peaches from homeowners' backyards." *Id.* ¶ 29. "Fund Manager 1 told [Defendant] that the Fund Managers planned to pivot the shell company into the cannabis business, and run a stock promotional campaign." *Id.* ¶ 47. "[Defendant] replied that 'we' should come up with a business idea." *Id.* ¶ 48. Defendant "stated that he could write the business plan[,]" "suggested that the shell company be a peach-picking company," and "advised the Fund Managers to start looking for a CEO for the shell company." *Id.* ¶¶ 49–51.

"After the July 2018 meeting, [Defendant] drafted a business plan for Issuer A" that "described Issuer A as a company that would collect unpicked fruit from homeowners in the Southern California area, consolidate it, and sell it to grocery stores and the public generally." *Id.* ¶ 53. Defendant "knew, when he drafted the business plan, that it was fictitious" and that "the Fund Managers planned for Issuer A to operate in the cannabis industry and run a stock promotion campaign." *Id.* ¶¶ 54–55.

"[Defendant] met with the Fund Managers on or about September 27, 2017 in Del Mar, California." *Id.* ¶ 56. At the meeting, "the Fund Managers introduced [Defendant] to a consultant who would purportedly provide funding for Issuer A (the "Consultant")." *Id.* ¶ 57. "The Fund Managers told [Defendant] that Consulting Company B was the Consultant's company." *Id.* ¶ 58. "[T]he Fund Managers and the Consultant discussed, in front of [Defendant], that Fund Manager 1's money would go to Consulting Company B, and would then be loaned to Issuer A." *Id.* ¶ 59. Defendant suggested "that Consulting Company B's loans would become convertible to Issuer A Stock, which would generate more free trading shares." *Id.* ¶ 60.

"On or about October 16, 2017, the Fund Managers informed [Defendant] that they had selected a puppet CEO ("the Puppet") to serve as Issuer A's CEO." *Id.* ¶ 62. "The

Puppet was, unbeknownst to [Defendant], an undercover FBI agent." *Id.* ¶ 64. Defendant "understood that the Puppet was controlled by the Fund Managers" and "communicated on decisions concerning Issuer A with the Fund Managers and the Consultant, sometimes including the Puppet and sometimes not including him." *Id.* ¶¶ 63, 65.

"Between late 2017 and approximately mid-August of 2018, [Defendant] periodically contacted the Fund Managers about Issuer A." *Id.* ¶ 66. "On or about November 14, 2017, in Del Mar, California, Fund Manager 1 introduced [Defendant] to an associate of his (the "Associate"), whose role he indicated was to help make Fund Manager 1's new companies appear legitimate and to organize stock promotions." *Id.* ¶ 67. "The Associate, unbeknownst to [Defendant] was a cooperating witness" who "became [Defendant's] main point of contact regarding Issuer A." *Id.* ¶¶ 69–70.

"On November 20, 2017, [Defendant] incorporated Issuer A in Wyoming." *Id.* ¶ 68. "In or about May 10, 2019, [Defendant] recommended to the Associate an audit firm ("Audit Firm C"), to serve as the outside auditor for Issuer A[,]" and "explained to the Associate that Audit Firm C had experience with microcap issuers, but did not audit so many microcap firms that it might arouse regulatory suspicion." *Id.* ¶¶ 71–72. "During the same call, [Defendant] suggested to the Associate that the Puppet update his social media profile." *Id.* ¶ 74. "[Defendant] told the Associate that most people have a biographical profile on social media, and the lack of one for the Puppet 'looked strange.'" *Id.* ¶ 76. "[Defendant] recommended that the Puppet's profile go back five years and that it should show him 'doing something.'" *Id.* ¶ 77.

"In or about January 19, 2018, the Fund Managers told [Defendant] that a stock promoter with whom they had met was leery of working with [Defendant], due to the SEC subpoena enforcement actions against him." *Id.* ¶ 79. "On May 20, 2019, [Defendant] emailed the Puppet and the Associate, attaching an engagement letter for another attorney ("Attorney D") who would provide the opinion letter for Issuer A's Form S-1, instead of [Defendant] providing it." *Id.* ¶ 80. "In an email dated June 5, 2019

from [Defendant] to Audit Firm C, Issuer A's bookkeeper, and the Puppet, [Defendant] falsely stated that changing attorneys had been the Puppet's idea." *Id.* ¶ 81. Nevertheless, Defendant "continued to perform legal work for Issuer A." *See id.* ¶ 82. "In conversations with the Associate between at least May 15, 2019 and July 30, 2019, the Associate reiterated to [Defendant] that the Fund Managers intended to rebrand Issuer A as a cannabis company and then run a promotional campaign in order to sell its shares at a profit." *Id.* ¶ 83.

**B.    Filing of SEC Form S-1 and Amendments**

"[Defendant] had begun to prepare Issuer A's draft Form S-1 as early as October 2017" and "[o]n or about May 10, 2019, [ ] sent the draft S-1 by email for review by Issuer A's auditor, bookkeeper, and the Puppet." *Id.* ¶¶ 85–86. "On June 17, 2019, [Defendant] filed Issuer A's initial Form S-1 with the SEC." *Id.* ¶ 87. Between June and August, 2019, [Defendant], on behalf of Issuer A, subsequently responded to several comments on the S-1 from the SEC's Division of Corporation Finance." *Id.* ¶ 88. "[Defendant] prepared and filed Issuer A's amended Forms S-1 on July 25, August 5, and August 27, 2019." *Id.* ¶ 89. "The Issuer A Form S-1 went effective on September 11, 2019." *Id.* ¶ 90.

"The Issuer A Form S-1 was materially false and misleading in several aspects, and gave the false impression that Issuer A was an actual fruit harvesting and distribution business, whereas it was a sham company." *Id.* ¶ 91. Specifically, Defendant alleges the following: "[t]he Issuer A Form S-1 characterized Issuer A as a development stage company that would go into the fruit harvesting and distribution industry" when "[i]n reality, [Defendant] had simply made up the company" and "had been told, by the time he prepared the Form S-1, that the Fund Managers' actual plan for Issuer A's business was to convert it into a cannabis company and carry out a stock promotion campaign." *Id.* ¶¶ 92–94. The Issuer A form S-1 also "had, as attachments, purported form agreements with third parties, for the fruit harvesting and distribution business." *Id.* ¶ 97. "[Defendant] created the sham form agreements." *Id.* ¶ 98. Although "[Defendant] knew

the Fund Managers were in control of both Issuer A and the Puppet[,]" "[t]he Issuer A Form S-1 stated that the Puppet was Issuer A's sole officer, director, promoter, and control person."  *Id.* ¶¶ 104–106.  "The Issuer A Form S-1 stated that in 2017, the Puppet provided Issuer A $5,000 in initial funding for 5 million shares of its common stock" when "[i]n reality, [Defendant] recharacterized the $5,000 retainer that he had received from Fund Manager 1 on behalf of the Fund as funding by the Puppet."  *Id.* ¶¶ 110, 112. "[T]he Puppet did not provide any initial funding to Issuer A."  *Id.* ¶ 113.  "The Issuer A Form S-1 stated that, from November 20, 2017 to May 20, 2019, Consulting Company B had provided $29,000 in funding to Issuer A, in return for promissory notes" when "[Defendant] had been told that Consulting Company B was merely a front for Fund Manager 1's financing of the company."  *Id.* ¶¶ 116, 118.  "Issuer A's Form S-1 included an attorney opinion letter concluding that the shares to be issued in the offering were validly issued, fully paid, and non-assessable."  *Id.* ¶ 121.  "[Defendant] had Attorney D sign the opinion letter in order to hide [Defendant's] name from Issuer A's Form S-1 filed with the SEC."  *Id.* ¶ 123.  "[Defendant] received at least $39,500 for his role in Issuer A's fraudulent Form S-1."  *Id.* ¶ 125.

Plaintiff brings two causes of action in its Complaint: (1) fraud in the offer or sale of securities in violation of Sections 17(a)(1) and (3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(3); and (2) fraud in the offer or sale of securities in violation of Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).  *Id.* ¶¶ 133–42.

Defendant now moves to dismiss both causes of action against him under Rules 12(b)(6) and 9(b).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570.  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  A court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*)).  The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124 (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  The allegations "must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or

misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). However, the SEC may aver scienter allegations generally since "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* Fed. R. Civ. P. 9(b); *Fecht v. Price Co.*, 70 F.3d 1078, 1082 n.4 (9th Cir. 1995), *cert denied,* 517 U.S. 1136 (1996) ("Plaintiff may simply state that scienter existed to satisfy the requirements of Rule 9(b).")

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

Defendant moves to dismiss all causes of action alleged against him. *See* Doc. No. 13. The Court assesses each claim in turn.

### A. Violation of Section 17(a)(2) of the Securities Act

In its second cause of action, Plaintiff alleges violation of Section 17(a)(2). Compl. ¶¶ 138–42. Specifically, Plaintiff alleges that Defendant prepared and filed with the SEC Issuer A's materially false and misleading registration statement and amendments thereto. *Id.* ¶¶ 85–124.

To state a claim under Section 17(a)(2), Plaintiff must allege facts sufficient to show: "in connection with the offer or sale of a security: (1) a material false statement or omission; (2) made with at least negligence; (3) the receipt of money or property by means thereof; (4) by means of interstate commerce." *See SEC v. Wayland*, No. SACV 17-01156 AG (DFMx), 2019 U.S. Dist. LEXIS 115749, at *14 (C.D. Cal. Apr. 8, 2019) (citing *SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001)).

Defendant argues that the Complaint fails to plead the first and second elements, and additionally argues that the claim fails to meet the heightened pleading requirement

1   set forth in Rule 9(b). *See* Doc. No. 13 at 21–23.[2]  The Court confines its analysis to the

2   elements challenged in the motion to dismiss.

3       As to the first element, a fact is material when "a substantial likelihood that the

4   disclosure of the omitted fact would have been viewed by the reasonable investor as

5   having significantly altered the 'total mix' of information made available." *SEC v. Phan*,

6   500 F.3d 895, 902 (9th Cir. 2007) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32

7   (1988)).  In this case, the alleged misstatements occurred in registration statements and

8   documents in support of those registration statements, including that the "Fund

9   Managers' actual plan for Issuer A's business was to convert it into a cannabis

10  company", that the "purported form agreements with third parties, for the fruit harvesting

11  and distribution business" attached to Form S-1 were shams, that Issuer A was "actually

12  controlled/promote by the Fund Managers" and not the Puppet CEO, and that the

13  description of Issuer A's funding was false. *See* Compl. ¶¶ 85–124.  This is sufficient to

14  plead materiality. *See SEC v. Husain*, No. 2:16-cv-03250-ODW (E), 2017 U.S. Dist.

15  LEXIS 29131, at *21 (C.D. Cal. Mar. 1, 2017) ("There is little doubt that a reasonable

16  investor would have wanted to know the true identity of the shell's leader, whether the

17  shell was a viable business operating according to its stated business plan . . . Other than

18  a corporation's financials, its leadership, the nature of its operations, and its plan for the

19  future would seem to be the most important pieces of information available to an

20  investor.").

21      Defendant additionally urges that these allegations "do not describe fraud or Rule

22  17(a) violations on the part of [Defendant].  The allegations, when considered

23  individually and as a whole, describe a securities attorney competently and honestly

24  performing his job on behalf of his perceived clients . . ." Doc. No. 13 at 15.  However,

25  in reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of

26

27

28

---

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

all factual allegations and construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  Doing so here, the Court is satisfied that the first element is sufficiently stated.

As to the second element, Plaintiff alleges that Defendant "with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  Compl. ¶ 141. Negligence "is the failure to exercise reasonable care under all the circumstances." *SEC v. Cutting*, No. 2:21-cv-103-BLW, 2022 U.S. Dist. LEXIS 178181, at *34 (D. Idaho Sept. 28, 2022) (first citing *Robare Group, Ltd. v. SEC*, 922 F.3d 468, 477 (D.C. Cir. 2019); and then citing *SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001))). Plaintiff adequately pleads negligence with its detailed allegations regarding the hiring of Defendant—a securities attorney—by the Fund Managers; the July 18, 2017 planning meeting regarding taking Issuer A public; subsequent communication between Defendant, the Fund Managers, and the Associate; and the allegedly misleading registration statements and amendments thereto prepared and filed by Defendant. *See* Compl. ¶¶ 13–51, 85–124.  Additionally, Plaintiff sufficiently pleads scienter. *See Fecht*, 70 F.3d at 1082 n.4 (9th Cir. 1995) ("Plaintiff may simply state that scienter existed to satisfy the requirements of Rule 9(b).")

Defendant also argues that the Complaint fails to plead fraud with the requisite particularity. *See* Doc. No. 13 at 14–19.  In support of this argument, Defendant points to *SEC v. Spinosa*, 31 F. Supp. 3d 1371 (S.D. Fla. 2014). *See id.* at 14.  Plaintiff urges that "[h]ere, the allegations of the Complaint fall well short of those in [*Spinosa*] [ ] that were deemed inadequate[.]" *Id.* at 15.  However, Defendant's reliance on *Spinosa* is misplaced. *Spinosa* is inapposite because the purported misstatements in the instant case are centered on Issuer A's Form S-1 and attachments thereto rather than misrepresentations to specific investors. *See* Compl. ¶¶ 92–124.  Additionally, *Spinosa* involved a complex Ponzi scheme, and it was in that context that the district court held

that the SEC was required to identify the investors to whom the defendant made "oral misrepresentations on several occasions" in order to plead fraud with sufficient particularity. *Spinosa*, 31 F. Supp. 3d at 1374–75. The scheme "perpetrated by now-convicted Scott Rothstein" was carried out "through the sale of fake discounted settlements which Rothstein ran through his law firm." *Id.* at 1373. The SEC alleged that the defendant, who worked at the bank where Rothstein's firm maintained trust accounts, made misrepresentations to the investors to aid Rothstein's scheme. *Id.* at 1373–74. The court found it "necessary to identify the recipients to put [the defendant] on notice of the exact statements upon which the SEC's claims are based." *Id.* at 1375. In contrast, this case is straightforward and the allegations as to Defendant are sufficiently detailed to "give [Defendant] notice of the particular misconduct . . . so that [he] can defend against the charge and not just deny that [he has] done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Defendant identifies specific filings with the SEC, Defendant's alleged role in these filings, and what was purportedly misleading about the filings. *See* Compl. ¶¶ 85–124. This is sufficient to meet even the heightened pleading requirements of Rule 9(b). *See SEC v. Ficeto*, 839 F. Supp. 2d 1101, 1105 (C.D. Cal. 2011) ("The SEC provides detailed information regarding . . . Defendant, his [ ] role in the fraudulent transactions, the specific fraudulent acts that were allegedly performed, and how the acts constitute fraud.")

Accordingly, the Court **DENIES** the motion to dismiss Claim 2.

## B.  Violation of Sections 17(a)(1) and (3) of the Securities Act

In its first cause of action, Plaintiff alleges "scheme liability" arising under Section 17(a)(1) and (3) of the Securities Act. Compl. ¶¶ 133–137. To state a claim under Section 17(a)(1), Plaintiff must allege facts sufficient to show Defendant (1) employed a device, scheme, or artifice to defraud; (2) in connection with the purchase of a sale or security; (3) with scienter; and (4) in interstate commerce. *See Husain*, 2017 U.S. Dist. LEXIS 29131, at *24 (citing *SEC v. Zouvas*, No. 16-cv-0998-CAB (DHB), 2016 WL 6834028, at *5, *10 (S.D. Cal. Nov. 21, 2016)). Scienter is defined as a "mental state

embracing intent to deceive, manipulate, or defraud." *See Aaron v. SEC*, 446 U.S. 680, 686 n.5 (1980) (*quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n.12 (1976)). Scienter can be established by showing knowledge or recklessness. *SEC v. Feng*, 935 F.3d 721, 734 (9th Cir. 2019); *see also Gebhart v. SEC*, 595 F.3d 1034, 1041 (9th Cir. 2010). The same elements required to establish a Section 17(a)(1) violation suffice to establish a 17(a)(3) violation, except that Section 17(a)(3) only requires a showing of negligence. *Phan*, 500 F.3d at 908.

Defendant argues that the Complaint fails to plead the first and second elements, and additionally argues that the claim fails to meet the heightened pleading requirement set forth in Rule 9(b). *See* Doc. No. 13 at 20–21. The Court confines its analysis to the elements challenged in the motion to dismiss.

As to the first element, in the Ninth Circuit, scheme liability requires that the defendant engaged in deceptive acts that had "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *SEC v. Baccam*, 2017 U.S. Dist. LEXIS 88450, at *16 (C.D. Cal. June 8, 2017) (quoting *Burnett v. Rowzee*, 561 F. Supp 2d 1120 (C.D. Cal. 2008)). This includes "manipulative or deceptive act[s] in furtherance of a scheme" that "create the false appearance of fact." *See Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *vacated on other grounds*, 519 F.3d 1041 (9th Cir. 2008). However "[i]t is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect." *Id.* (emphasis in original).

At this early stage in the litigation, the Court is satisfied that Plaintiff adequately alleges the first element against Defendant for the purposes of a motion to dismiss. The scheme alleged here is that Defendant "participated in fraudulent scheme to create a sham public company and register an offering of its securities with the SEC, concealing from SEC filings the company's true control persons/promoters and source of funding, and his role as its securities attorney." Compl. ¶ 1. Defendant provides detailed allegations

describing Defendant's participation in the alleged scheme, including dates of conversations, participants in those conversations, Defendant's involvement in those conversations, Defendant's advice to the Fund Managers and Associate, Defendant's preparation and filing of the purportedly "materially false and misleading" Issuer A Form S-1, Defendant's creation of deceptive sham form agreements in support of Issuer A's Form S-1, and Defendant's preparation and filing of Issuer A's Amended Forms S-1. *Id.* ¶¶ 85–124. Plaintiff alleges that Defendant's deceitful activities in furtherance of the scheme include, among other things, preparing a fictitious business plan for Issuer A and describing to the Fund Managers "how he could create the façade of a *bona fide* business, take it public, and obtain quotation clearance for its stock to trade on the over-the-counter market." *See id.* ¶¶ 52–55

As to the second element, Plaintiff alleges that Defendant "with scienter, employed devices, schemes and artifices to defraud; and, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser." *Id.* ¶ 136. The same allegations described *supra* Section III.A suffice to plead negligence under Section 17(a)(3). Additionally, Plaintiff adequately pleads scienter under Section 17(a)(1). *See Fecht*, 70 F.3d at 1082 n.4 ("Plaintiff may simply state that scienter existed to satisfy the requirements of Rule 9(b).")

Defendant also argues that the Complaint fails to plead fraud with the requisite particularity. *See* Doc. No. 13 at 22. However, Plaintiff "provides detailed information regarding . . . Defendant, his [ ] role in the fraudulent transactions, the specific fraudulent acts that were allegedly performed, and how the acts constitute fraud." *Ficeto*, 839 F. Supp. 2d at 1105. The Court is satisfied that Plaintiff meets the pleading requirements of Rule 9(b).

Accordingly, the Court **DENIES** the motion to dismiss Claim 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss. Defendant must now respond to the Complaint within the time prescribed by Federal Rule of Civil Procedure 12.

**IT IS SO ORDERED**.

Dated:  November 17, 2022

HON. MICHAEL M. ANELLO
United States District Judge